IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CINDY L. WILLIAMS,                              08-CV-1262-BR

        Plaintiff,                         OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
**Commissioner of Social
Security,**

        Defendant.


**RICHARD F. MCGINTY**
P.O. Box 12806
Salem, Oregon  97301
(503) 371-9636

        Attorney for Plaintiff

**KENT S. ROBINSON**
Acting United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1 - OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**DAVID J. BURDETT**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2522

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Cindy L. Williams seeks judicial review of a final decision of the Commissioner of the Social Security Admin- istration (SSA) in which he denied Williams's protective application for Disability Insurance Benefits (DIB) and found Williams ineligible for Supplemental Security Income (SSI) payments.

    This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.


## ADMINISTRATIVE HISTORY

    Plaintiff filed her most recent applications for DIB and SSI

2 - OPINION AND ORDER

on July 6, 2005.  Tr. 39, 42.[1]  The applications were denied
initially and on reconsideration.  Tr. 57-60, 62-63.  An
Administrative Law Judge (ALJ) held a hearing on February 27,
2008.  Tr. 16, 775-822.  At the hearing, Plaintiff was
represented by an attorney.  Tr. 16, 775.  Plaintiff, a medical
expert (ME), and a vocational expert (VE) testified at the
hearing.  Tr. 775-76.

     The ALJ issued a decision on June 9, 2008, in which he found
Williams was not entitled to benefits.  Tr. 16-31.  That decision
became the final decision of the Commissioner on October 3, 2008,
when the Appeals Council denied Williams's request for review.
Tr. 8-10.


<u>**BACKGROUND**</u>

     Williams was 44 years old at the time of the hearing before
the ALJ.  Tr. 778.  Williams completed her education through the
ninth grade.  Tr. 739, 778.[2]  She has worked as a housekeeper,
casino cashier, slot-machine attendant, waitress, and
agricultural worker.  Tr. 358, 624-25.  She was fired for
absenteeism in April 1999 from her most recent position as a

---

     [1] Citations to the official transcript filed on March 3,
2009, are cited as "Tr."

     [2] The record also indicates Williams completed the tenth
grade, but the Court relies on Williams's testimony at the
hearing that she did not finish tenth grade.  Tr. 114, 380, 595,
778.

casino slot-machine attendant.  Tr. 781-82.  Williams alleges a
disability onset date of October 1, 1999.  Tr. 39, 42.

Williams has been diagnosed with a number of physical
ailments, including chronic headaches, chronic neck and back pain
(cervical and lumbosacral strain), asthma, high cholesterol,
gastroesophogeal reflux, epicondylitis of the right elbow, and
obesity.  Tr. 248, 368, 484, 498-99, 523, 735, 746.

Williams also has an extensive history of major depressive
disorder, borderline personality features, and related panic and
anxiety disorders.  Tr. 245-51, 255, 259, 267, 274, 278, 384,
484, 487, 499, 511, 742, 746.  As a result, Williams suffers from
fatigue, reduced concentration and pace, and difficulty with
social interaction.  Tr. 281, 385, 487, 496, 498, 509.  Williams
has a history of harming herself; suicidal ideation; and thoughts
of harm to others, including her infant son.  Tr. 256, 271, 315,
364, 381, 482, 485, 590, 650, 742.  Williams also has been
diagnosed with substance-abuse disorders such as marijuana,
methamphetamine, and alcohol abuse.  Tr. 499, 507.


## **STANDARDS**

The initial burden of proof rests on the claimant to
establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful

4 - OPINION AND ORDER

activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Robbins,*
466 F.3d at 882.  The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.

2005).  The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

**I.    The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is
potentially dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commis-
sioner determines the claimant's impairments meet or equal one of
the listed impairments that the Commissioner acknowledges are so

severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform

work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## **ALJ'S FINDINGS**

At Step One, the ALJ found Williams has not engaged in substantial gainful activity since her alleged onset date of October 1, 1999.  Tr. 18.

At Step Two, the ALJ found Williams had the following severe impairments:  depression; anxiety; substance abuse; shoulder, elbow, and hand impairments; lumbosacral strain; asthma; and obesity.  Tr. 18-21.  He found Williams's gastrointestinal problems, headaches, and a cyst were not severe impairments.

Tr. 18, 22.

At Step Three, the ALJ found Williams's impairments do not meet or equal the criteria for any Listed Impairment under 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 22-24.  The ALJ then assessed Williams's RFC and found she is able to perform sedentary-exertion work, to walk two blocks, to stand for 30 minutes, to sit for one hour, to push or pull no more than 20 pounds for short periods not to exceed five minutes, and to drive a car.  Tr. 25.  He found Williams's right upper extremity limited to lifting no more than 10 pounds occasionally and not repetitively.  Tr. 25.  He found Williams's eyesight to be functional with corrective lenses.  Tr. 25.

The ALJ concluded Williams's memory is mildly impaired and constitutes a moderate impairment of her ability to maintain concentration.  Tr. 25.   Finally, the ALJ found Williams has stamina and pace that is 85% of a normal person her age in good health and is 90% as alert as she would be without the medication she must take.  Tr. 25.

Based on Williams's RFC and the testimony of the VE, the ALJ found at Step Four that Williams can return to her past relevant work as a cashier.  Tr. 30.  In the alternative, the ALJ concluded Williams could perform work as an office helper and as a small-products assembler.  Tr. 30-31.  Accordingly, the ALJ found Williams is not disabled and, therefore, is not entitled to

9 - OPINION AND ORDER

benefits.  Tr. 30-31.

<u>**DISCUSSION**</u>

Williams contends the ALJ erred by (1) failing to credit the opinion of examining psychologist Molly C. McKenna, Ph.D.; (2) failing to give appropriate weight to the opinion of treating physician T. Britt Simmons, M.D.; (3) improperly weighing the testimony of the ME Sally Clayton, M.D.; (4) failing to consider all of Williams's severe impairments; (5) failing to include all of Williams's relevant work-related limitations when formulating her RFC; and (6) failing to determine whether the testimony of the VE was consistent with the *Dictionary of Occupational Titles* (DOT).

**I.  Dr. McKenna.**

Williams contends the ALJ erred by failing to credit the opinion of Dr. McKenna, one of Williams's examining physicians, when determining Williams's RFC.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* at 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or

treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Id*.  *See also Lester*, 81 F.3d at 830-32.

**A.    Dr. McKenna's Opinion.**

Dr. McKenna performed a comprehensive neuropsychological evaluation of Williams on August 3, 2005.  Tr. 480-85. Dr. McKenna based her report on a clinical interview, a review of Williams's available records, and a battery of neuropsychological tests.  Tr. 480.  Dr. McKenna diagnosed Williams with, among other conditions, Major Depressive Disorder, Recurrent, Severe without psychotic features; Anxiety Disorder NOS; and Borderline Personality Features.  Tr. 484.  She also assessed Williams with a Global Assessment of Functioning (GAF)[3] of 40, indicative of "a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).  Among other serious symptoms, Dr. McKenna noted Williams's suicidal ideation and thoughts of killing her infant son.  Tr. 484.

Dr. McKenna noted Williams had not been able to successfully return to work due to "ongoing psychological symptoms of anxiety

---

[3] The GAF scale is used to report a clinician's judgment of the patient's overall level of social, occupational, and psychological functioning on a scale of 1 to 100.  Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

and depression," which "suggest that at this time, she is not emotionally stable enough to handle the demands and stress of training and employment." Tr. 484. Dr. McKenna concluded the "primary impediments to returning this client to gainful employment are her ongoing mood and anxiety symptoms, social discomfort, lack of work experience, and subjective sense of distress." Tr. 484. In addition, Dr. McKenna noted Williams has suffered episodes of decompensation that have interfered with her ability to meet the responsibilities of work for brief periods. Tr. 484. According to Dr. McKenna, the "long-standing" nature of Williams's symptoms will make it difficult for her to return to gainful employment. Tr. 484.

Dr. McKenna also completed a Mental Residual Functional Capacity Report on August 9, 2005. Tr. 486-87. In her report, Dr. McKenna found Williams "moderately limited" in the following work-performance areas: the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to complete a normal workday/workweek without interruption by psychological symptoms or by the need for an unreasonable number of rests; the ability to interact appropriately with the public; and the ability to get along with co-workers without distracting them or exhibiting behavioral extremes. Tr. 487. A finding of "moderately limited"

means "a limitation which seriously interferes with the
individual's ability to perform the designated activity on a
regular and sustained basis, i.e., 8 hours a day, 5 days a week,
or an equivalent schedule."  Tr. 486.

**B.   ALJ's Decision.**

The ALJ found Williams is capable of sedentary work and has
a sufficient RFC to perform her past relevant work as a cashier
or, in the alternative, as an office helper or small-products
assembler.  Tr. 30-31.  When assessing Williams's RFC, the ALJ
did not give "much weight" to Dr. McKenna's opinion that Williams
is not stable enough to maintain gainful employment.  Tr. 29.
The ALJ discredited Dr. McKenna's opinion on three grounds:
(1) It is not consistent with other medical evidence in the
record; (2) Dr. McKenna concluded Williams could improve with
proper treatment; and (3) Dr. McKenna concluded Williams has only
moderate functional limitations resulting from her psychological
impairments.  Tr. 29.

**1.   Inconsistent with other Medical Evidence.**

The ALJ concluded Dr. McKenna's findings are "not consistent
with the medical or opinion evidence in the record."  Tr. 29.
The ALJ cites three bases for his conclusion:  (1) Dr. McKenna's
GAF score of 40 "seems out of proportion to the findings in
the medical evidence"; (2) Dr. McKenna noted Williams is capable
of performing most of her activities of daily living; and

13- OPINION AND ORDER

(3) Dr. McKenna's opinion is inconsistent with the psychological evaluation of Williams by Robert A. Kruger, Psy.D.  Tr. 29.

The ALJ concluded Dr. McKenna's GAF score is not proportional with the medical evidence and points out in other parts of his decision that the medical record reflects Williams also received GAF scores of 53, 55, and 58.  Tr. 19, 26, 29.  The record, however, is replete with GAF scores for Williams in the 40s that do not appear to have been considered by the ALJ.[4] Tr. 315, 329, 333, 355, 384, 596, 614, 620-21, 669, 692, 694. Thus, the record indicates Williams's GAF scores are variable, and the mere fact that the record reflects some GAF scores higher than the one Dr. McKenna assigned to Williams in August 2005 does not discredit Dr. McKenna's opinion.

The ALJ also concluded Dr. McKenna's statement that Williams can perform most activities of daily living undermines Dr. McKenna's opinion that Williams is incapable of gainful employment.  Tr. 29, 481.  The ALJ, however, did not provide specific reasons supported by the record for his conclusion.  The ALJ also failed to identify any medical evidence in the record that undermines Dr. McKenna's conclusion that Williams is too unstable and that her depressive symptoms are too severe to

---

[4] A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job).  DSM-IV at 31-34.

14- OPINION AND ORDER

handle the stress of employment, to work with co-workers or the
general public, to handle training, or to sustain concentration
and pace over a regular workday or workweek.  Dr. McKenna also
specifically identifies Williams's functional limitations that
result from her depression and anxiety.  Tr. 484-88.

Finally, it appears the ALJ also found Dr. McKenna's opinion
is inconsistent with the psychological evaluation of Williams by
Dr. Kruger.  Tr. 29.  Based on his interview of Williams, a
number of progress reports from 2003 to 2005, and a review of
Dr. McKenna's report, Dr. Kruger provided a psychological
evaluation of Williams.  Tr. 738.  Dr. Kruger, however, did not
personally perform neuropsychological tests such as those
performed by Dr. McKenna.  Tr. 738-43.  Although Dr. Kruger
points out that Williams has a chronic mood disorder and
depression and diagnosed Williams with "Major Depressive
Disorder, recurrent, mild," Tr. 742, the ALJ noted Dr. Kruger's
findings that Williams can perform most of her activities of
daily living adequately; that Williams's ability to perform
"brief, basic, routine, repetitive tasks" is fair; and that there
is not any diagnostic evidence of psychotic or anxiety-related
disorders.  Tr. 29.  The ALJ weighed Dr. Kruger's opinion
"heavily because it does not show any significant limitations in
the claimant's ability to work an ordinary workday, which is
consistent with the other opinion evidence in the record."

Tr. 29.  The ALJ did not identify "the other opinion evidence" in
the record that he considered to be consistent with or
corroborative of Dr. Kruger's opinion.

In any event, even though Dr. Kruger did not expressly
describe any significant limitations on Williams's ability to
work, he did not conclude Williams is capable of working on a
regular and continuing basis.  Tr. 740.  Dr. Kruger noted twice
in his report that he reviewed Dr. McKenna's neuropsychological
evaluation and he summarized Dr. McKenna's findings, but he did
not indicate he disagreed with Dr. McKenna's conclusions about
Williams's ability to work.  Tr. 738, 742.  Although Dr. Kruger's
diagnosis of "mild" Major Depressive Disorder differs from
Dr. McKenna's diagnosis of "severe" Major Depressive Disorder,
neither Dr. Kruger nor the ALJ indicate the differing diagnoses
are significant as to Williams's ability to sustain gainful
employment.

In addition, Dr. McKenna's diagnosis of Williams's anxiety
and depression are consistent with those of Dr. Simmons, who
treated Williams numerous times over several years.  Dr. Simmons
routinely diagnosed Williams with depression and anxiety, ensured
Williams sought treatment from mental-health professionals, and
prescribed numerous medications to address Williams's symptoms.
Tr. 248-51, 550-63.  Moreover, Dr. Simmons stated in his progress
note on August 23, 2001, that Williams's depressive symptoms made

16- OPINION AND ORDER

her unemployable at that time pending review in six weeks.
Tr. 556.

Dr. McKenna's diagnoses of Williams's anxiety and depression disorders are also consistent with those of Dr. George Suckow, M.D., who treated Williams numerous times over several years and diagnosed Williams with depression and anxiety. Tr. 355-68. In his progress note on January 30, 2004, Dr. Suckow stated he wrote Williams a job-search exemption due to depressive symptoms that made her unemployable at that time. Tr. 357.

Although the ALJ did not address the opinions of nonexamining physicians Robert Henry, Ph.D., or Peter LeBray, Ph.D., the Court notes these physicians opined Williams is capable of gainful employment. Tr. 386-400, 496-511. On the basis of their review of the available records, both physicians diagnosed Williams with affective and anxiety-related disorders, including Major Depressive Disorder, recurrent and Anxiety Disorder, NOS. Tr. 389, 392, 394, 499, 502, 504. In addition, Dr. LeBray diagnosed Williams with an Organic Mental Disorder characterized by Borderline Intellectual Functioning. Tr. 389-90. Nevertheless, both physicians conclude Williams can complete a normal workday despite moderate limitations in her ability to remember detailed instructions, to interact with co-workers or the public, and to maintain concentration and pace. Tr. 386-88, 496-98. Dr. Henry, however, notes Williams's depression and

17- OPINION AND ORDER

anxiety could result in an "inhibited ability to carry out job tasks."  Tr. 511.

In any event, the ALJ did not rely on these opinions to support his conclusion that Williams is not disabled.  IN addition to the fact that the opinions of nonexamining physicians cannot alone constitute sufficient evidence to justify rejecting the opinion of a treating physician, the Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in  making its decision." *Lester*, 81 F.3d at 831; *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006)(citation omitted).

### 2. Williams's Potential for Improvement.

The ALJ also discredited Dr. McKenna's opinion on the ground that "Dr. McKenna . . . indicated that the claimant's condition could readily improve with the appropriate medication and treatment."  Tr. 29.  The ALJ, however, inaccurately paraphrased Dr. McKenna's prognosis.  As noted, Dr. McKenna reported numerous impediments to Williams's ability to return to work an opined Williams's cognitive problems, such as her difficulty with verbal information, could "likely improve" only "with appropriate treatment *and remission of her psychological conditions."* Tr. 484 (emphasis added).  Dr. McKenna, however, does not predict whether Williams's psychological conditions actually would improve.  Dr. McKenna further noted her prognosis was "guarded." Tr. 487.  Thus, Dr. McKenna's statement is at most a "hope" for

18- OPINION AND ORDER

the future rather than a statement about Williams's present
capabilities.  Tr. 484.  Ultimately Dr. McKenna's conclusion was
that Williams "should be stabilized psychiatrically via
medication and counseling before encouragement to consider
employment."  Tr. 484.

   **3.    "Moderate" Symptoms.**

   The ALJ also discredited Dr. McKenna's opinion on the
ground that her mental RFC report "only indicated moderate
symptoms, which is inconsistent with a complete inability to
work."  Tr. 29.  The ALJ did not provide any basis for his
conclusion.  As noted, the designation of "moderately limited" on
the RFC report reflects "a limitation which seriously interferes
with the individual's ability to perform the designated activity
on a regular and sustained basis, i.e., 8 hours a day, 5 days a
week, or an equivalent schedule."  Tr. 486.  Moreover, Social
Security regulations do not require claimants to demonstrate a
"complete inability to work" to be eligible for benefits.
*Smolen*, 80 F.3d at 1284 n.7.  In fact, claimants need only show
an inability to work on a *sustained* basis.  20 C.F.R. §§
404.1512(a), 416.912(a) (emphasis added).  *See also Lester*, 81
F.3d at 833 (a sporadic ability to work is not inconsistent with
disability).  Thus, the standard relied on by the ALJ is not
correct, nor is it a legitimate basis for discrediting Dr.
McKenna's opinion.

19- OPINION AND ORDER

On this record, therefore, the Court concludes the ALJ erred
when he failed to provide specific, legitimate reasons for
rejecting Dr. McKenna's opinion that Williams's psychological
impairments and the resulting symptoms she suffers from render
her unable to sustain gainful employment on a regular and
continuous basis as required by SSR 96-8p.  When "the ALJ fail[s]
to provide legally sufficient reasons for rejecting . . . [a]
physician['s] opinion[]," the Court credits that opinion as true.
*Benecke v. Barnhart*  379 F.3d 587, 594 (9th Cir. 2004).  *See also*
*Lester*, 81 F.3d at 834 (improperly rejected physician opinion is
credited as matter of law).  If Dr. McKenna's opinion is credited
as true, then Williams is not psychologically stable enough to
endure the stress of training or employment due to recurrent
depressive and anxiety symptoms, including episodes of
decompensation.  Tr. 484.  Accordingly, this Court finds Williams
is disabled and, therefore, is entitled to benefits.  The Court,
therefore, need not address the remaining issues raised by
Williams.


## REMAND

The decision whether to remand this case for further
proceedings or for the payment of benefits is a decision within
the discretion of the court.  *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or

for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the Court finds the record is complete regarding Williams's psychological impairments. The Court credits Dr. McKenna's opinion that Williams is incapable of performing work on a regular and continuing basis because of her depression and anxiety that cause serious limitations on her ability to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday/workweek without

21- OPINION AND ORDER

interruption by psychological symptoms or by the need for an unreasonable number of rests, to interact appropriately with the public, and to get along with co-workers without distracting them or exhibiting behavioral extremes.  Tr. 480-88.  Thus, the Court concludes further proceedings would "serve no useful purpose." *Smolen*, 80 F.3d at 1292.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

If Plaintiff intends to submit an application for attorneys' fees under 42 U.S.C. § 406(b), Plaintiff shall submit such application and a copy of the Notice of Award issued by the Commissioner within 60 days from receipt of the Notice, which the Court concludes is a reasonable time pursuant to *Gisbrecht v. Barnhart*, 535 U.S. 790, 794 (2002), and Federal Rule of Civil Procedure 60(b)(6).

IT IS SO ORDERED.

DATED this 11th day of December, 2009.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


22- OPINION AND ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CINDY L. WILLIAMS,                          08-CV-1262-BR

       Plaintiff,                       OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


RICHARD F. MCGINTY
P.O. Box 12806
Salem, Oregon  97301
(503) 371-9636

      Attorney for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1 - OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**DAVID J. BURDETT**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2522

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Cindy L. Williams seeks judicial review of a final decision of the Commissioner of the Social Security Admin-istration (SSA) in which he denied Williams's protective application for Disability Insurance Benefits (DIB) and found Williams ineligible for Supplemental Security Income (SSI) payments.

    This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.


## ADMINISTRATIVE HISTORY

    Plaintiff filed her most recent applications for DIB and SSI


2 - OPINION AND ORDER

on July 6, 2005.  Tr. 39, 42.[1]  The applications were denied
initially and on reconsideration.  Tr. 57-60, 62-63.  An
Administrative Law Judge (ALJ) held a hearing on February 27,
2008.  Tr. 16, 775-822.  At the hearing, Plaintiff was
represented by an attorney.  Tr. 16, 775.  Plaintiff, a medical
expert (ME), and a vocational expert (VE) testified at the
hearing.  Tr. 775-76.

The ALJ issued a decision on June 9, 2008, in which he found
Williams was not entitled to benefits.  Tr. 16-31.  That decision
became the final decision of the Commissioner on October 3, 2008,
when the Appeals Council denied Williams's request for review.
Tr. 8-10.

## BACKGROUND

Williams was 44 years old at the time of the hearing before
the ALJ.  Tr. 778.  Williams completed her education through the
ninth grade.  Tr. 739, 778.[2]  She has worked as a housekeeper,
casino cashier, slot-machine attendant, waitress, and
agricultural worker.  Tr. 358, 624-25.  She was fired for
absenteeism in April 1999 from her most recent position as a

---

[1] Citations to the official transcript filed on March 3,
2009, are cited as "Tr."

[2] The record also indicates Williams completed the tenth
grade, but the Court relies on Williams's testimony at the
hearing that she did not finish tenth grade.  Tr. 114, 380, 595,
778.

3 - OPINION AND ORDER

casino slot-machine attendant.  Tr. 781-82.  Williams alleges a disability onset date of October 1, 1999.  Tr. 39, 42.

Williams has been diagnosed with a number of physical ailments, including chronic headaches, chronic neck and back pain (cervical and lumbosacral strain), asthma, high cholesterol, gastroesophogeal reflux, epicondylitis of the right elbow, and obesity.  Tr. 248, 368, 484, 498-99, 523, 735, 746.

Williams also has an extensive history of major depressive disorder, borderline personality features, and related panic and anxiety disorders.  Tr. 245-51, 255, 259, 267, 274, 278, 384, 484, 487, 499, 511, 742, 746.  As a result, Williams suffers from fatigue, reduced concentration and pace, and difficulty with social interaction.  Tr. 281, 385, 487, 496, 498, 509.  Williams has a history of harming herself; suicidal ideation; and thoughts of harm to others, including her infant son.  Tr. 256, 271, 315, 364, 381, 482, 485, 590, 650, 742.  Williams also has been diagnosed with substance-abuse disorders such as marijuana, methamphetamine, and alcohol abuse.  Tr. 499, 507.


## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful

activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Robbins,*
466 F.3d at 882.  The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.

2005).  The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


### DISABILITY ANALYSIS

**I.    The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is
potentially dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commis-
sioner determines the claimant's impairments meet or equal one of
the listed impairments that the Commissioner acknowledges are so

6 - OPINION AND ORDER

severe as to preclude substantial gainful activity. *Stout*, 454
F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii).  The criteria for the listed impairments,
known as Listings, are enumerated in 20 C.F.R. part 404, subpart
P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d
1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's
RFC is at the heart of Steps Four and Five of the sequential
analysis engaged in by the ALJ when determining whether a
claimant can still work despite severe medical impairments.  An
improper evaluation of the claimant's ability to perform specific
work-related functions "could make the difference between a
finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform

work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Williams has not engaged in substantial gainful activity since her alleged onset date of October 1, 1999.  Tr. 18.

At Step Two, the ALJ found Williams had the following severe impairments:  depression; anxiety; substance abuse; shoulder, elbow, and hand impairments; lumbosacral strain; asthma; and obesity.  Tr. 18-21.  He found Williams's gastrointestinal problems, headaches, and a cyst were not severe impairments.

8 - OPINION AND ORDER

Tr. 18, 22.

At Step Three, the ALJ found Williams's impairments do not meet or equal the criteria for any Listed Impairment under 20 C.F.R. part 404, subpart P, appendix 1. Tr. 22-24. The ALJ then assessed Williams's RFC and found she is able to perform sedentary-exertion work, to walk two blocks, to stand for 30 minutes, to sit for one hour, to push or pull no more than 20 pounds for short periods not to exceed five minutes, and to drive a car. Tr. 25. He found Williams's right upper extremity limited to lifting no more than 10 pounds occasionally and not repetitively. Tr. 25. He found Williams's eyesight to be functional with corrective lenses. Tr. 25.

The ALJ concluded Williams's memory is mildly impaired and constitutes a moderate impairment of her ability to maintain concentration. Tr. 25. Finally, the ALJ found Williams has stamina and pace that is 85% of a normal person her age in good health and is 90% as alert as she would be without the medication she must take. Tr. 25.

Based on Williams's RFC and the testimony of the VE, the ALJ found at Step Four that Williams can return to her past relevant work as a cashier. Tr. 30. In the alternative, the ALJ concluded Williams could perform work as an office helper and as a small-products assembler. Tr. 30-31. Accordingly, the ALJ found Williams is not disabled and, therefore, is not entitled to

benefits.  Tr. 30-31.

## DISCUSSION

Williams contends the ALJ erred by (1) failing to credit the opinion of examining psychologist Molly C. McKenna, Ph.D.; (2) failing to give appropriate weight to the opinion of treating physician T. Britt Simmons, M.D.; (3) improperly weighing the testimony of the ME Sally Clayton, M.D.; (4) failing to consider all of Williams's severe impairments; (5) failing to include all of Williams's relevant work-related limitations when formulating her RFC; and (6) failing to determine whether the testimony of the VE was consistent with the *Dictionary of Occupational Titles* (DOT).

## I.   Dr. McKenna.

Williams contends the ALJ erred by failing to credit the opinion of Dr. McKenna, one of Williams's examining physicians, when determining Williams's RFC.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* at 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or

10- OPINION AND ORDER

treating physician is uncontroverted, however, the ALJ must give
"clear and convincing reasons" for rejecting it.  *Id*.  *See also*
*Lester*, 81 F.3d at 830-32.

**A.    Dr. McKenna's Opinion.**

Dr. McKenna performed a comprehensive neuropsychological
evaluation of Williams on August 3, 2005.  Tr. 480-85.
Dr. McKenna based her report on a clinical interview, a review of
Williams's available records, and a battery of neuropsychological
tests.  Tr. 480.  Dr. McKenna diagnosed Williams with, among
other conditions, Major Depressive Disorder, Recurrent, Severe
without psychotic features; Anxiety Disorder NOS; and Borderline
Personality Features.  Tr. 484.  She also assessed Williams with
a Global Assessment of Functioning (GAF)[3] of 40, indicative of "a
major impairment in several areas, such as work or school, family
relations, judgment, thinking, or mood."  Am. Psych. Ass'n,
*Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV)
31-34 (4th ed. 2000).  Among other serious symptoms, Dr. McKenna
noted Williams's suicidal ideation and thoughts of killing her
infant son.  Tr. 484.

Dr. McKenna noted Williams had not been able to successfully
return to work due to "ongoing psychological symptoms of anxiety

---

[3] The GAF scale is used to report a clinician's judgment of
the patient's overall level of social, occupational, and
psychological functioning on a scale of 1 to 100.  Am. Psych.
Ass'n, *Diagnostic and Statistical Manual of Mental Disorders IV*
(DSM-IV) 31-34 (4th ed. 2000).

and depression," which "suggest that at this time, she is not
emotionally stable enough to handle the demands and stress of
training and employment."  Tr. 484.  Dr. McKenna concluded the
"primary impediments to returning this client to gainful
employment are her ongoing mood and anxiety symptoms, social
discomfort, lack of work experience, and subjective sense of
distress."  Tr. 484.  In addition, Dr. McKenna noted Williams has
suffered episodes of decompensation that have interfered with her
ability to meet the responsibilities of work for brief periods.
Tr. 484.  According to Dr. McKenna, the "long-standing" nature of
Williams's symptoms will make it difficult for her to return to
gainful employment.  Tr. 484.

Dr. McKenna also completed a Mental Residual Functional
Capacity Report on August 9, 2005.  Tr. 486-87.  In her report,
Dr. McKenna found Williams "moderately limited" in the following
work-performance areas:  the ability to maintain attention and
concentration for extended periods; the ability to work in
coordination with or in proximity to others without being
distracted by them; the ability to complete a normal
workday/workweek without interruption by psychological symptoms
or by the need for an unreasonable number of rests; the ability
to interact appropriately with the public; and the ability to get
along with co-workers without distracting them or exhibiting
behavioral extremes.  Tr. 487.  A finding of "moderately limited"

means "a limitation which seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule."  Tr. 486.

**B.    ALJ's Decision.**

The ALJ found Williams is capable of sedentary work and has a sufficient RFC to perform her past relevant work as a cashier or, in the alternative, as an office helper or small-products assembler.  Tr. 30-31.  When assessing Williams's RFC, the ALJ did not give "much weight" to Dr. McKenna's opinion that Williams is not stable enough to maintain gainful employment.  Tr. 29. The ALJ discredited Dr. McKenna's opinion on three grounds: (1) It is not consistent with other medical evidence in the record; (2) Dr. McKenna concluded Williams could improve with proper treatment; and (3) Dr. McKenna concluded Williams has only moderate functional limitations resulting from her psychological impairments.  Tr. 29.

**1.    Inconsistent with other Medical Evidence.**

The ALJ concluded Dr. McKenna's findings are "not consistent with the medical or opinion evidence in the record."  Tr. 29. The ALJ cites three bases for his conclusion:  (1) Dr. McKenna's GAF score of 40 "seems out of proportion to the findings in the medical evidence"; (2) Dr. McKenna noted Williams is capable of performing most of her activities of daily living; and

13- OPINION AND ORDER

(3) Dr. McKenna's opinion is inconsistent with the psychological evaluation of Williams by Robert A. Kruger, Psy.D.  Tr. 29.

The ALJ concluded Dr. McKenna's GAF score is not proportional with the medical evidence and points out in other parts of his decision that the medical record reflects Williams also received GAF scores of 53, 55, and 58.  Tr. 19, 26, 29.  The record, however, is replete with GAF scores for Williams in the 40s that do not appear to have been considered by the ALJ.[4] Tr. 315, 329, 333, 355, 384, 596, 614, 620-21, 669, 692, 694. Thus, the record indicates Williams's GAF scores are variable, and the mere fact that the record reflects some GAF scores higher than the one Dr. McKenna assigned to Williams in August 2005 does not discredit Dr. McKenna's opinion.

The ALJ also concluded Dr. McKenna's statement that Williams can perform most activities of daily living undermines Dr. McKenna's opinion that Williams is incapable of gainful employment.  Tr. 29, 481.  The ALJ, however, did not provide specific reasons supported by the record for his conclusion.  The ALJ also failed to identify any medical evidence in the record that undermines Dr. McKenna's conclusion that Williams is too unstable and that her depressive symptoms are too severe to

---

[4] A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job).  DSM-IV at 31-34.

14- OPINION AND ORDER

handle the stress of employment, to work with co-workers or the
general public, to handle training, or to sustain concentration
and pace over a regular workday or workweek.  Dr. McKenna also
specifically identifies Williams's functional limitations that
result from her depression and anxiety.  Tr. 484-88.

Finally, it appears the ALJ also found Dr. McKenna's opinion
is inconsistent with the psychological evaluation of Williams by
Dr. Kruger.  Tr. 29.  Based on his interview of Williams, a
number of progress reports from 2003 to 2005, and a review of
Dr. McKenna's report, Dr. Kruger provided a psychological
evaluation of Williams.  Tr. 738.  Dr. Kruger, however, did not
personally perform neuropsychological tests such as those
performed by Dr. McKenna.  Tr. 738-43.  Although Dr. Kruger
points out that Williams has a chronic mood disorder and
depression and diagnosed Williams with "Major Depressive
Disorder, recurrent, mild," Tr. 742, the ALJ noted Dr. Kruger's
findings that Williams can perform most of her activities of
daily living adequately; that Williams's ability to perform
"brief, basic, routine, repetitive tasks" is fair; and that there
is not any diagnostic evidence of psychotic or anxiety-related
disorders.  Tr. 29.  The ALJ weighed Dr. Kruger's opinion
"heavily because it does not show any significant limitations in
the claimant's ability to work an ordinary workday, which is
consistent with the other opinion evidence in the record."

15- OPINION AND ORDER

Tr. 29.  The ALJ did not identify "the other opinion evidence" in
the record that he considered to be consistent with or
corroborative of Dr. Kruger's opinion.

In any event, even though Dr. Kruger did not expressly
describe any significant limitations on Williams's ability to
work, he did not conclude Williams is capable of working on a
regular and continuing basis.  Tr. 740.  Dr. Kruger noted twice
in his report that he reviewed Dr. McKenna's neuropsychological
evaluation and he summarized Dr. McKenna's findings, but he did
not indicate he disagreed with Dr. McKenna's conclusions about
Williams's ability to work.  Tr. 738, 742.  Although Dr. Kruger's
diagnosis of "mild" Major Depressive Disorder differs from
Dr. McKenna's diagnosis of "severe" Major Depressive Disorder,
neither Dr. Kruger nor the ALJ indicate the differing diagnoses
are significant as to Williams's ability to sustain gainful
employment.

In addition, Dr. McKenna's diagnosis of Williams's anxiety
and depression are consistent with those of Dr. Simmons, who
treated Williams numerous times over several years.  Dr. Simmons
routinely diagnosed Williams with depression and anxiety, ensured
Williams sought treatment from mental-health professionals, and
prescribed numerous medications to address Williams's symptoms.
Tr. 248-51, 550-63.  Moreover, Dr. Simmons stated in his progress
note on August 23, 2001, that Williams's depressive symptoms made

16- OPINION AND ORDER

her unemployable at that time pending review in six weeks.
Tr. 556.

Dr. McKenna's diagnoses of Williams's anxiety and depression
disorders are also consistent with those of Dr. George Suckow,
M.D., who treated Williams numerous times over several years and
diagnosed Williams with depression and anxiety.  Tr. 355-68.  In
his progress note on January 30, 2004, Dr. Suckow stated he wrote
Williams a job-search exemption due to depressive symptoms that
made her unemployable at that time.  Tr. 357.

Although the ALJ did not address the opinions of
nonexamining physicians Robert Henry, Ph.D., or Peter LeBray,
Ph.D., the Court notes these physicians opined Williams is
capable of gainful employment.  Tr. 386-400, 496-511.  On the
basis of their review of the available records, both physicians
diagnosed Williams with affective and anxiety-related disorders,
including Major Depressive Disorder, recurrent and Anxiety
Disorder, NOS.  Tr. 389, 392, 394, 499, 502, 504.  In addition,
Dr. LeBray diagnosed Williams with an Organic Mental Disorder
characterized by Borderline Intellectual Functioning.  Tr. 389-
90.  Nevertheless, both physicians conclude Williams can complete
a normal workday despite moderate limitations in her ability to
remember detailed instructions, to interact with co-workers or
the public, and to maintain concentration and pace.  Tr. 386-88,
496-98.  Dr. Henry, however, notes Williams's depression and

17- OPINION AND ORDER

anxiety could result in an "inhibited ability to carry out job tasks."  Tr. 511.

In any event, the ALJ did not rely on these opinions to support his conclusion that Williams is not disabled.  IN addition to the fact that the opinions of nonexamining physicians cannot alone constitute sufficient evidence to justify rejecting the opinion of a treating physician, the Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in  making its decision." *Lester*, 81 F.3d at 831; *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006)(citation omitted).

### 2.  Williams's Potential for Improvement.

The ALJ also discredited Dr. McKenna's opinion on the ground that "Dr. McKenna . . . indicated that the claimant's condition could readily improve with the appropriate medication and treatment."  Tr. 29.  The ALJ, however, inaccurately paraphrased Dr. McKenna's prognosis.  As noted, Dr. McKenna reported numerous impediments to Williams's ability to return to work an opined Williams's cognitive problems, such as her difficulty with verbal information, could "likely improve" only "with appropriate treatment *and remission of her psychological conditions."*
Tr. 484 (emphasis added).  Dr. McKenna, however, does not predict whether Williams's psychological conditions actually would improve.  Dr. McKenna further noted her prognosis was "guarded."
Tr. 487.  Thus, Dr. McKenna's statement is at most a "hope" for

18- OPINION AND ORDER

the future rather than a statement about Williams's present
capabilities.  Tr. 484.  Ultimately Dr. McKenna's conclusion was
that Williams "should be stabilized psychiatrically via
medication and counseling before encouragement to consider
employment."  Tr. 484.

> **3.   "Moderate" Symptoms.**

The ALJ also discredited Dr. McKenna's opinion on the
ground that her mental RFC report "only indicated moderate
symptoms, which is inconsistent with a complete inability to
work."  Tr. 29.  The ALJ did not provide any basis for his
conclusion.  As noted, the designation of "moderately limited" on
the RFC report reflects "a limitation which seriously interferes
with the individual's ability to perform the designated activity
on a regular and sustained basis, i.e., 8 hours a day, 5 days a
week, or an equivalent schedule."  Tr. 486.  Moreover, Social
Security regulations do not require claimants to demonstrate a
"complete inability to work" to be eligible for benefits.
*Smolen*, 80 F.3d at 1284 n.7.  In fact, claimants need only show
an inability to work on a *sustained* basis.  20 C.F.R. §§
404.1512(a), 416.912(a) (emphasis added).  *See also Lester*, 81
F.3d at 833 (a sporadic ability to work is not inconsistent with
disability).  Thus, the standard relied on by the ALJ is not
correct, nor is it a legitimate basis for discrediting Dr.
McKenna's opinion.

19- OPINION AND ORDER

On this record, therefore, the Court concludes the ALJ erred when he failed to provide specific, legitimate reasons for rejecting Dr. McKenna's opinion that Williams's psychological impairments and the resulting symptoms she suffers from render her unable to sustain gainful employment on a regular and continuous basis as required by SSR 96-8p.  When "the ALJ fail[s] to provide legally sufficient reasons for rejecting . . . [a] physician['s] opinion[]," the Court credits that opinion as true. *Benecke v. Barnhart*  379 F.3d 587, 594 (9th Cir. 2004).  *See also Lester*, 81 F.3d at 834 (improperly rejected physician opinion is credited as matter of law).  If Dr. McKenna's opinion is credited as true, then Williams is not psychologically stable enough to endure the stress of training or employment due to recurrent depressive and anxiety symptoms, including episodes of decompensation.  Tr. 484.  Accordingly, this Court finds Williams is disabled and, therefore, is entitled to benefits.  The Court, therefore, need not address the remaining issues raised by Williams.

## REMAND

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court.  *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or

20- OPINION AND ORDER

for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the Court finds the record is complete regarding Williams's psychological impairments. The Court credits Dr. McKenna's opinion that Williams is incapable of performing work on a regular and continuing basis because of her depression and anxiety that cause serious limitations on her ability to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday/workweek without

21- OPINION AND ORDER

interruption by psychological symptoms or by the need for an unreasonable number of rests, to interact appropriately with the public, and to get along with co-workers without distracting them or exhibiting behavioral extremes.  Tr. 480-88.  Thus, the Court concludes further proceedings would "serve no useful purpose." *Smolen*, 80 F.3d at 1292.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

If Plaintiff intends to submit an application for attorneys' fees under 42 U.S.C. § 406(b), Plaintiff shall submit such application and a copy of the Notice of Award issued by the Commissioner within 60 days from receipt of the Notice, which the Court concludes is a reasonable time pursuant to *Gisbrecht v. Barnhart*, 535 U.S. 790, 794 (2002), and Federal Rule of Civil Procedure 60(b)(6).

IT IS SO ORDERED.

DATED this 11th day of December, 2009.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge


22- OPINION AND ORDER